UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LYNN EDWARD MECHAM, a/k/a LYNNE EDWARD MECHAM,<br><br>          Petitioner,<br><br>     v.<br><br>JOANNA SMITH,<br><br>          Respondent. | Case No. 1:10-CV-00264-CV-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are Petitioner's Motion to Reconsider Appointment of

Counsel (Dkt. 7) and Respondent's Motion for Summary Judgment (Dkt. 17.) Having

fully reviewed the record, including the state court record, the Court finds that the parties

have adequately presented the facts and legal arguments in the briefs and record and that

the decisional process would not be significantly aided by oral argument. Therefore, in

the interest of avoiding further delay, the Court shall decide this matter on the written

motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d).

Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

**PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL**

Petitioner has filed a Motion to Reconsider Appointment of Counsel. (Dkt. 7.) He has provided a copy of a recent test conducted at the prison, concluding that he has a third-grade reading level and a second-grade language level. Petitioner also provides past briefing from his case showing that Dr. Richard Smith opined that Petitioner had a borderline intelligence level of 71.

While there is no constitutional right to counsel in a habeas corpus action, *Coleman v. Thompson,* 501 U.S. 722, 755 (1991), counsel may be appointed under certain circumstances. A habeas petitioner has a right to counsel, as provided by rule, if an evidentiary hearing is required in his case. *See* Rule 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on Petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

Petitioner has submitted a well-written motion. He has also submitted a brief typewritten response to the pending motion for summary judgment. It appears that Petitioner is receiving some type of aid at the prison to help him articulate his claims and arguments. The Constitution does not mandate that prisoners, literate or illiterate, be able

to conduct generalized research, but only that they be able to present their grievances to the courts. *Madrid v. Gomez*, 190 F.3d 990 (9th Cir. 1999). Here, it appears that Petitioner's needs have been met.

Respondent currently requests summary judgment on the merits of Petitioner's *Miranda* claim. The standard for habeas corpus review is extremely high. In addition, a habeas corpus action is a review of the state court proceedings; here, Petitioner's counsel thoroughly briefed the *Miranda* issues at the state court level. Considering the totality of circumstances, the Court concludes that appointment of counsel is not warranted or necessary to the decision-making process.

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

### 1.     Standard of Law Governing Habeas Corpus Review

Summary judgment is appropriately granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(1)(a). The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11, Rules Governing Section 2254 Cases. Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine disputes as to any material facts and the moving party is entitled to judgment as a matter of law. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

Judicial notice will be taken of the court docket in the underlying state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Under the Anti-terrorism and Effective Death Penalty Act (AEDPA), the Court cannot grant habeas relief on any federal claim that the state court adjudicated on the merits unless the adjudication of the claim:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) has two clauses, each with independent meaning. For a decision to be "contrary to" clearly established federal law, the petitioner must establish that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

To satisfy the "unreasonable application" clause, the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. A federal court cannot grant relief simply because it

concludes in its independent judgment that the decision is incorrect or wrong; the state

court's application of federal law must be objectively unreasonable. *Lockyer v. Andrade*,

538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). The state court need not

cite or even be aware of the controlling United States Supreme Court decision to be

entitled to AEDPA deference. *Early v. Packer*, 537 U.S. 3, 8 (2002).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the

decision was based upon factual determinations that were "unreasonable in light of the

evidence presented in the State court proceeding." *Id*. As neither party disputes the state

court's factual determination as to what was said during the interview or captured on the

DVD (State's Exhibit A-5), the Court need not address § 2254(d)(2).

In *Harrington v. Richter*, 131 S.Ct. 770 (2011), the United States Supreme Court

reiterated that the federal courts may not simply re-determine the claim on its merits after

the highest state court has done so, just because the federal court would have made a

different decision. Rather, the review is necessarily deferential. The United States

Supreme Court explained that under § 2254(d), a habeas court (1) "must determine what

arguments or theories supported or . . . could have supported, the state court's decision;

and (2) then it must ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision of this Court."

*Id*. at 786. If fairminded jurists could disagree on the correctness of the state court's

decision, then a federal court cannot grant relief under § 2254(d). *Id*. The Supreme Court

emphasized: "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

Under all circumstances, state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## 2.    Petitioner's Claim

Petitioner brings a two-part claim based upon *Miranda v. Arizona*, 384 U.S. 436 (1966). He alleges that his Fifth Amendment rights were violated when Gooding County Police Chief Jeffrey Perry (Chief Perry) continued questioning Petitioner after he allegedly requested counsel. (Petition, Dkt. 3, p. 2.) Petitioner also alleges that his waiver was not voluntary because of Petitioner's mental health issues and because Chief Perry "overbore his will" by "downplaying" the importance of *Miranda* rights. (*Id.*, p. 2; 3-1, pp. 4-5.) The Idaho appellate courts decided these issues in the context of a denial of a motion to suppress. (State's Lodging B-4.)

## 3.    Background

In October 2007, Petitioner was suspected of engaging in sexual conduct with a minor. Petitioner made incriminating statements to officers, which he later sought, unsuccessfully, to suppress. In determining the suppression issue on appeal, the Idaho Court of Appeals summarized the facts presented as follows:

The record indicates that Mecham was booked into the Gooding County Jail on a probation violation and released. Later, Mecham was brought in for questioning. Police Chief Jeff Perry began by asking Mecham if he understood what *Miranda*[1] rights were. After Mecham nodded that he understood, Chief Perry quickly read him his *Miranda* rights from a prepared waiver form. When Chief Perry finished reading from the form, he asked Mecham to select "I do" or "I do not" wish to speak with law enforcement, and initial and sign the form. As he passed the form to Mecham, Chief Perry asked how he was being treated at the jail. Mecham signed and initialed the form, but did not indicate whether he wished to speak with the officers. He informed Chief Perry that he wanted to know why he was there before he decided whether to speak with him. Chief Perry explained to Mecham that there were some criminal accusations against him, and that he (Chief Perry) had a lot of work and was simply trying to get some things out of the way that day. Mecham told Chief Perry that "David said keep my mouth shut," and explained that David was his lawyer, and he had seen him in booking. When Chief Perry asked Mecham why he was supposed to keep his mouth shut, Mecham said he just was not supposed to talk to anybody. After Mecham again emphasized that he did not know why he was there, Chief Perry informed him that he was there because he was being accused of rape and he wanted to know Mecham's side of the story. After a brief moment, Mecham said, "Yeah, you can ask me some questions." Mecham then circled "I do" on the Miranda waiver form indicating that he was willing to talk to officers while simultaneously stating, "I do."

As a result of the interrogation, Mecham made several incriminating statements. The record indicates that Mecham was clear, coherent, responsive, made eye contact when answering questions, and asked for clarification when he did not understand a question. He admitted he was wrong for doing what he did and stated that he should not have done it. After Mecham was asked to write down his statement, he asked if it would be used against him in court. When Mecham learned that it could, he made the decision to write it anyway.

(State's Lodging B-4, pp. 1-2.)

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**MEMORANDUM DECISION AND ORDER - 7**

Petitioner was charged by Information with four counts of lewd conduct with a minor under the age of sixteen involving one ten-year-old female victim. (State's Lodging A-1, pp. 20-23.) As noted above, Petitioner filed a motion to suppress his statements made during the interview with Chief Perry, arguing that (1) the State should have stopped questioning Petitioner after he "invoked" his right to counsel; and (2) the State wrongly caused Petitioner's will to be overborne, making his statements involuntary. (State's Lodging A-1, pp. 26-28.)

At the hearing, Chief Perry testified, and a DVD of the interview was entered into evidence and viewed by the Court. (State's Lodgings A-3, pp. 44-52; A-5.) The DVD shows that, when asked if he understood his rights, Petitioner nodded his head in the affirmative. (State's Lodging B-4, p. 6.)

Petitioner called psychologist Richard Smith, Ph.D., to testify about findings he had made after evaluating Petitioner in December 2006, as a result of a request by the Idaho Department of Health and Welfare in connection with placement of Petitioner's children in foster care. (State's Lodging A-3, pp. 11-28.) Dr. Smith testified that Mecham has a borderline intelligence level of 71,[2] that Mecham had been diagnosed with bipolar disorder, that Mecham may also have attention deficit hyperactivity disorder (ADHD),

---

[2] Dr. Smith explained that mild mental retardation starts at an IQ of 70 and below, while borderline intellectual functioning is an IQ of 70 and above. (State's Lodging A-3, p. 22.) He also explained that the margin of error for a finding of 71 would be between 68 and 75. (*Id.* at 24.)

**MEMORANDUM DECISION AND ORDER - 8**

and that Mecham had a second-grade reading level. (State's Lodgings A-3, pp. 6-31; B-4, p. 2.) The district court denied the motion to suppress.

**4.      Standard of Law re: Custodial Interrogation**

To determine whether the motion to suppress should have been granted, the Idaho Court of Appeals relied on several state court cases and on three United States Supreme Court cases: *Miranda v. Arizona*, *supra*; *Edwards v. Arizona*, 451 U.S. 477 (1981); and *Davis v. United States*, 512 U.S. 452 (1994).

In *Miranda v. Arizona*, the Supreme Court of the United States determined that, prior to subjecting a suspect to custodial interrogation, law enforcement officers must inform the suspect of his constitutional rights, as follows:

> [T]hat he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

384 U.S. at 479.

The *Miranda* Court set forth what must occur if an accused invokes his rights:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney

and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

*Id*. at 474-75.

Opinions in *Edwards* (1981) and *Davis* (1994) followed and clarified *Miranda* (1966). The Supreme Court explained: "We held in *Edwards* that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present." (*Davis*, 512 U.S. at 462, citing *Edwards*.) The Supreme Court explained the *Davis* holding as "after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." 512 U.S. at 461.

Though *Davis*'s holding specifically addressed a *post-waiver* invocation of the right to counsel, the *Davis* opinion nevertheless generally offered insight into what constitutes an invocation of the right to counsel:

> The applicability of the "'rigid' prophylactic rule" of *Edwards* requires courts to "determine whether the accused actually invoked his right to counsel." *Smith v. Illinois*, *supra*, 469 U.S., at 95, 105 S.Ct., at 492 (emphasis added), *quoting Fare v. Michael C.*, 442 U.S. 707, 719, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1979). To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. *See Connecticut v. Barrett*, *supra*, 479 U.S., at 529, 107 S.Ct., at 832. Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S., at 178, 111 S.Ct., at 2209. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be

invoking the right to counsel, our precedents do not require the cessation of questioning. *See ibid.* ("[T]he likelihood that a suspect would wish counsel to be present is not the test for applicability of *Edwards*"); *Edwards v. Arizona*, *supra*, 451 U.S., at 485, 101 S.Ct., at 1885 (impermissible for authorities "to reinterrogate an accused in custody if he has clearly asserted his right to counsel") (emphasis added).

Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." *Smith v. Illinois*, 469 U.S., at 97–98, 105 S.Ct., at 494 (brackets and internal quotation marks omitted). Although a suspect need not "speak with the discrimination of an Oxford don," *post*, at 2364 (SOUTER, J., concurring in judgment), he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect. *See Moran v. Burbine*, 475 U.S. 412, 433, n. 4, 106 S.Ct. 1135, 1147, n. 4, 89 L.Ed.2d 410 (1986) ("[T]he interrogation must cease until an attorney is present only [i]f the individual states that he wants an attorney") (citations and internal quotation marks omitted).

*Davis,* 512 U.S. at 459.

Here, Petitioner's task is to show that the Idaho Court of Appeals' decision is contrary to, or an unreasonable application of, a case decided by the United States Supreme Court.[3] *Edwards* and *Davis* address *Miranda* invocations and waivers in various

_____

[3] In analyzing *Miranda*'s protections, the United States Court of Appeals for the Ninth Circuit has distinguished whether a request for counsel occurred pre-waiver or post-waiver. *See United States v. Rodriguez*, 518 F.3d 1072 (9th Cir. 2008). Ninth Circuit case law is neither binding on the Idaho Court of Appeals, nor is it considered precedent for federal habeas corpus relief. However, circuit law can be used as persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

In *Rodriguez*, the Ninth Circuit Court limited *Davis*'s application as follows:

[T]he "clear statement" rule of *Davis* addresses only the scope of invocations of

factual circumstances, but none quite like Petitioner's. If the United States Supreme Court has never held *against* application of one of its case upon which the Idaho Court of Appeals relied, then it follows that Petitioner likely cannot show that application of *Edwards* and *Davis* to Petitioner's set of facts violated either the "contrary to" or "unreasonable application" clause. *See Schriro v. Landrigan*, 550 U.S. 465, 478 (2007) (concluding that a state court's decision was not objectively unreasonable because the Supreme Court had yet to speak on the issue).

The question at hand is whether Petitioner actually and unequivocally invoked his right to counsel prior to interrogation. A comparison to the fact patterns in *Edwards* and *Davis* is instructive to the "objectively unreasonable" determination. In *Edwards*, the suspect was given a *Miranda* warning, but decided to speak with officers. However, in the midst of the interrogation, he decided to invoke his right to have counsel present, saying: "I want an attorney before making a deal." The interrogation ended at that point. When officers returned the next day to continue the interrogation, despite the suspect's

<hr>

*Miranda* rights in a post-waiver context. It is well settled that "[i]nvocation and waiver [of *Miranda* rights] are entirely distinct inquiries, and the two must not be blurred by merging them together." *Smith v. Illinois*, 469 U.S. 91, 98, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). *Davis* addressed what the suspect must do to restore his *Miranda* rights after having already knowingly and voluntarily waived them. It did not address what the police must obtain, in the initial waiver context, to begin questioning.

518 F.3d 1078-79. *See also Sessoms v. Runnels*, 2011 WL 2163970 (No. 08–17790, slip op. 7337, 7349–50 (9th Cir. June 3, 2011)), *petition for rehearing en banc filed July 14, 2011* (explaining that the state court's reliance on *Davis* in a pre-waiver setting, though contrary to Ninth Circuit precedent, could not be used as a basis to grant habeas corpus review). Here, the Court does not rely on *Sessoms* in its opinion because of the pending petition for rehearing, but only notes its potential applicability.

clear invocation of his right the day before, the officers violated the suspect's right to have counsel present. 451 U.S. at 479-80.

In *Davis*, the suspect in a Navy murder investigation waived his right to remain silent and to counsel, proceeded with the interview, and then said "maybe I should talk to a lawyer," in the midst of the interview. *Id*. at 454-55. Some clarifying discussion was held as to whether the suspect wanted a lawyer, and it was determined the suspect did not want counsel present. The interview continued. Later in the interview, the suspect stated, "I think I want a lawyer before I say anything else." At that point, questioning ceased. *Id*. at 455. The lower courts found that the first statement, "maybe I should talk to a lawyer," was not an unequivocal invocation of the right to counsel. *Davis*, 512 U.S. at 462. The United States Supreme Court saw no reason to disturb the lower court findings. *Id*.

5. **Discussion of Whether Petitioner Invoked His Right to Counsel**

The first part of Petitioner's claim is that his Fifth Amendment rights were violated when Chief Perry questioned Petitioner after he allegedly requested counsel. Petitioner's stated at the beginning of the interview: "David said to keep my mouth shut." Petitioner argues that this was a clear and unambiguous request invoking his right for counsel.

The Idaho Court of Appeals determined that Petitioner did *not* unambiguously invoke his right to counsel: "Although Mecham told Chief Perry the advice his lawyer gave him, he never made it clear he intended to follow that advice." (State's Lodging B-4, p. 5.)

The Court of Appeals pointed to various factually-similar cases applying *Miranda* principles. In particular, the Idaho Court of Appeals noted that, in *Sechrest v. Ignacio*, 549 F.3d 789 (9th Cir. 2008), "the Ninth Circuit Court of Appeals held that a suspect's statement that he was told by his attorney to keep his mouth shut was not a clear invocation of his rights." *Id.* at 806. (State's Lodging B-4, p. 4.) The Idaho Court of Appeals noted that, "[a]lthough Sechrest told the officers what his attorney's advice was, he did not make it clear that he intended to follow that advice." 549 F.3d at 806. (B-4, p. 4.) The *Sechrest* Court held that an accused's mere mention of an attorney or advice from an attorney "is not an unambiguous request for counsel." 549 F.3d at 806 (B-4, p. 4.)

"Unreasonableness" is a narrow passageway to habeas corpus relief. In *Harrington v. Richter*, the Court explained the limits of habeas corpus review, stating that the habeas corpus statute, as amended by AEDPA,

> preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).

131 S.Ct. at 786. Stated another way, this Court is constrained to determine only whether the state court's decision was "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786–87.

**MEMORANDUM DECISION AND ORDER - 14**

The decisions in Petitioner's case and in *Sechrest* are both reasonable applications of *Miranda* precedent, and both are supported by adequate justification. Petitioner was warned that he had the right to have an attorney present during questioning. Petitioner told Chief Perry that Petitioner's attorney had told him to keep his mouth shut, but Petitioner did not say or do anything that showed he intended to follow his attorney's advice. Petitioner paused and reflected between signing the waiver form (to indicate that he understood his rights) and circling the "I do"portion of the form (to indicate that he was willing to talk to officers). During that pause, he demanded to know why he was being questioned. He was told that he was being accused of rape. (B-4, p. 2; Dkt. 11, DVD.) He then circled "I do," and verbally stated, "I do." (*Id*.) The Idaho Court of Appeals noted that "[]he record indicates that Mecham was clear, coherent, responsive and made eye contact when answering questions, and asked for clarification when he did not understand a question." (B-4, p. 2.) The DVD reflects the same. (Dkt. 11, DVD.) The trial court noted that Petitioner "never asked for David Heida or any other attorney's presence." (Dkt. A-1, p. 34.)

Petitioner argues that it is significant that Chief Perry did not have Petitioner sign his initials on the form, indicating that he understood his rights. (State's Lodging B-1, p. 7.) While this is one factor relevant to the inquiry, it is not enough to show that Petitioner did not hear, understand, and waive his *Miranda* rights, given the remainder of the record

and the lack of United States Supreme Court precedent speaking to the issue of the weight to be given to an incomplete *Miranda* waiver form.

Nothing in the record shows that the Idaho Court of Appeals's decision was contrary to, or an unreasonable application of, *Edwards* or *Davis*. Petitioner did not actually, clearly, and unequivocally invoke his right to counsel prior to interrogation; rather, he merely made a statement that his attorney did not want him to answer any questions. The record is replete with evidence showing that, despite his attorney's advice, Petitioner wanted to speak to Chief Perry, and that Petitioner clearly waived his right to have counsel present. Petitioner could have invoked his right to counsel, refused to circle, "I do," and remained silent until David Heida or another attorney could be present. He did none of these things.

On this record, Petitioner has not shown that the determination of the Idaho Court of Appeals that Petitioner did not unequivocally invoke his right to counsel "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Richter*, 131 S.Ct. at 786–87. Existing law and the record, in particular, the DVD of the interview, adequately support the Idaho Court of Appeals' decision. As a result of all of the foregoing, the Court concludes that Petitioner is not entitled to relief under § 2254(d)(2).

**6.     Standard of Law and Discussion of Whether Petitioner's Waiver was Voluntary**

The second subpart of Petitioner's claim is that he did not *voluntarily* waive his Fifth Amendment rights because of his mental health issues and because Chief Perry "overbore his will" by "downplaying" the importance of the *Miranda* rights. The Idaho Court of Appeals relied upon several state cases to make its determination.[4] (State's Exhibit B-4, p. 5.)

This Court finds that the state court cases relied upon reflect the standard set forth in *Edwards*, *supra*: "It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" 451 U.S. at 482. (See State's Exhibit B-4, pp. 5-.6) Therefore, the Idaho Court of Appeals used the correct standard of law to determine voluntariness.

The Idaho Court of Appeals noted that, at the suppression hearing, Petitioner called psychologist Richard Smith, Ph.D., to testify about findings he had made after evaluating Petitioner in December 2006, as a result of a Idaho Department of Health and Welfare inquiry in connection with placement of Petitioner's children in foster care.

---

[4] As noted above, the state court need not cite or even be aware of the controlling United States Supreme Court precedent to be entitled to AEDPA deference. *Early v. Packer*, 537 U.S. at 8.

(State's Lodging A-3, pp. 11-28.) Dr. Smith testified that Mecham has a borderline intelligence level of 71, that Mecham had been diagnosed with bipolar disorder, and that Mecham may also have attention deficit hyperactivity disorder (ADHD). (State's Lodging B-4, p. 2.)

While Mecham's mental health issues are a factor to be considered in whether his waiver was voluntary, they are not dispositive. Here, the DVD recording of the interview does not reflect that Petitioner was having any difficulty understanding his rights, the interview process, or the questions asked him. As noted above, Petitioner paused to require Chief Perry to tell him why he was being held before deciding whether to speak with officers. When Petitioner made up his mind to speak with officers, he did so decisively. During questioning, Petitioner "was clear, coherent, responsive, made eye contact and when answering questions, did not hesitate in asking for clarification when he did not understand a question." (B-4, p. 6.) The Court of Appeals further noted that Petitioner "demonstrated that he understood the possible consequences of making a written statement when he asked Chief Perry if it could be used against him in court, and deciding to write it anyway when he found out that it could." (*Id*.)

The trial court and the appellate court both found that Chief Perry may have been deceptive during the interview in indicating that he did not believe Petitioner used force in the acts of sexual misconduct with the minor.[5] (State's Exhibits A-1, p. ; B-4, p. 6.)

_____

[5] Petitioner eventually was charged with lewd and lascivious conduct, which does not necessarily include an element of force. (State's Exhibit A-1, pp. 1-3.)

**MEMORANDUM DECISION AND ORDER - 18**

Both courts indicated that "deception can be a valid interrogation technique and does not render Mecham's waiver involuntary." B-4, pp. 6-7.) Indeed, in *Moran v. Burbine*, 475 U.S. 412 (1986), the court concluded that the failure of the police to inform a suspect of efforts of an attorney, who had been retained by defendant's sister without his knowledge, to reach him while he was being interrogated did not violate *Miranda* on Fifth Amendment grounds and also fell "short of the kind of misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States" on due process grounds. *Id*. at 433-34. In *Colorado v. Connelly*, 479 U.S. 157, 170 (1986), the Court noted: "The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion."

The record does not support Petitioner's position that his free will was overborne by deceptive interrogation tactics. Chief Perry's continual suggestions that he did not believe there was any force involved could have set the stage for Petitioner to feel a false sense of security. At the same time, Chief Perry also spoke of the need to tell the truth when one has done something wrong, and spoke of a lesser penalty for being truthful, but did not suggest that there would be *no* penalty. The deceptive tactics were not threatening or coercive so as to render Petitioner's waiver involuntary, nor is it likely that the tactics produced an untrue confession. Therefore, the Idaho courts' decision that Petitioner's free will was not overborne by the deception under the totality of circumstances is not unreasonable.

Another voluntariness issue arises from Chief Perry's possible attempts "to distract [Petitioner] or downplay the importance of his *Miranda* rights and waiver by asking him how they were treating him at the jail and telling him this is something he just wanted to get out of the way" on a Sunday afternoon. (B-4, p. 6.) The *Miranda* warning itself was read to Petitioner quickly, but in an appropriately serious manner. Nothing in the DVD recording of the interview shows that Petitioner was not paying attention or that he did not understand the content of the warning. In fact, the portion of the waiver form dealing with speaking to the officers was particularly discussed between Chief Perry and Petitioner, again showing adequate attention and understanding on Petitioner's part.

On this record, Petitioner has not shown that the Idaho Court of Appeals's determination that "there is no evidence that Mecham's will was overborne by use of any coercive tactics on the part of law enforcement," (*id*.) is a decision "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Richter*, 131 S.Ct. at 786–87. Based on the totality of the circumstances, this Court concludes that the Idaho Court of Appeals's opinion is not contrary to, or an unreasonable application of, *Edwards* and other United States Supreme Court precedent governing the question of voluntariness of a *Miranda* waiver. For these reasons, Petitioner is not entitled to relief.

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has denied Petitioner's claims on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. The claims were well-developed in the state courts. The Court again concludes that the state court decisions are not unreasonable in fact or law, and the Court agrees with the outcome of each claim. The Court has carefully searched the record and reviewed the law independently of what Respondent has provided to satisfy itself that justice has been done in this matter where Petitioner is representing himself pro se and has limited access to legal resources. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court, and simultaneously file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b), **within thirty (30) days after entry of this Order**.

# ORDER

**IT IS ORDERED:**

1.      Petitioner's Motion for Reconsideration of Appointment of Counsel (Dkt.

7) is DENIED.

2.      Respondent's Motion for Summary Judgment (Dkt. 16) is GRANTED, and

the Petition is DISMISSED with prejudice.

3.      The Court will not grant a Certificate of Appealability in this case. If

Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to

forward a copy of this Order, the record in this case, and Petitioner's notice

of appeal, to the United States Court of Appeals for the Ninth Circuit.

DATED:  **August 17, 2011**

Honorable Edward J. Lodge
U. S. District Judge